OPINION OF THE COURT
Jack Mackston, J.
The People’s motion for an order directing attorneys participating in or associated with the above-captioned case to comply with Disciplinary Rules of the Code of Professional Responsibility DR 7-107 (22 NYCRR 1200.38), promulgated as joint rules of the Appellate Divisions of the Supreme Court of the State of New York, as they pertain to extrajudicial statements, is granted. Defendant’s cross motion to enlarge the order to include the Nassau County Police Department is granted upon the latter’s consent.
RELATED CASE
Several months prior to the commencement of this case, on September 23, 1992 the defendant in another much publicized case, which has been and continues to be the focus of national media attention, pleaded guilty to assault in the first degree in satisfaction of attempted murder charges for the shooting of Joseph Buttafuoco’s wife Mary Jo.
NATURE OF PRESENT PROCEEDING
On April 14, 1993, the Grand Jury handed up an indictment charging defendant Joseph Buttafuoco with 6 counts of rape in the first degree, 12 counts of sodomy in the third degree and endangering the welfare of a child.
At the time of the handup the People moved, by order to show cause, to compel the attorneys associated with this case to comply with Disciplinary Rules of the Code of Professional Responsibility DR 7-107 as they apply to extrajudicial statements and pretrial publicity and for a temporary order directing such compliance pending the determination of the motion.
The court granted the temporary order and set the matter down for submission of papers on April 19, 1993, at 2:00 p.m. Marvyn Kornberg, attorney for the defendant, opposed the *176 motion but cross-moved to include the Nassau County Police Department, should the relief sought be granted; Michael Rindenow, attorney for Mary Jo Buttafuoco, also opposed; Eric W. Naiburg and Philip Catapano, attorneys representing the alleged victim in this case, did not oppose; Christine Y. Edwards-Neumann, attorney for Roseann Fisher, has not responded and, therefore, is presumed not to oppose the motion. The Nassau County Police Department indicated it has no opposition and consents to the order. Newsday by its corporate counsel has submitted a letter in opposition.
THE DISTRICT ATTORNEY’S POSITION
The District Attorney contends that some of the attorneys associated with this case, in particular the attorneys for defendant and his wife, and the attorney for the alleged victim in this case, have previously made extrajudicial statements to the media in connection with the highly publicized case mentioned above and while the present case was under investigation. The District Attorney submits that these attorneys have appeared on local and national television programs in connection with the earlier case expressing their opinions on the credibility, reputation and character of Joseph Buttafuoco and also the individual who happens to be the alleged victim in this case.
The District Attorney maintains that these extrajudicial statements which have continued up to the present month, demonstrate that such conduct will continue and intensify as this case develops, unless the court intervenes.
The People have submitted sworn allegations and documentation concerning these extrajudicial statements which have not been disputed. The District Attorney contends that continuation of such extrajudicial statements by counsel concerning the defendant and possible witnesses in the present case would have a substantial likelihood of materially prejudicing this proceeding and seriously impair obtaining a fair trial.
THE OPPOSITION
The attorney for Mrs. Buttafuoco opposes the motion and argues that neither he nor his client is a party to the instant action and that his First Amendment rights should not be abridged.
Counsel for defendant also opposes claiming that he and his *177 client had an absolute right to make comments and statements regarding the above-publicized case referred to, since they were not parties to that action; and that the pretrial publicity generated in the prior case cannot serve as a basis for the relief sought even though it may have a "spill-over effect” on the instant indictment.
He further contends that before there can be pretrial restraints of First Amendment rights a hearing must be conducted and findings of fact made which show that "news coverage” of this case, at this time, will endanger the impartiality of the proceeding.
THE PRESS
The court acknowledges Newsday’s standing to oppose (CBS, Inc. v Young, 522 F2d 234, 237). Newsday contends that the manner in which criminal trials are conducted is of great concern and importance to the public and that in cases which are highly visible "the need of the public for detailed information becomes more important, not less”.
The newspaper acknowledges the court’s constitutional obligation to assure a fair trial but argues that a "gag” order should not issue unless and until it is strictly necessary and according to Newsday this does not appear to be the situation at the present time.
Newsday notes that Code of Professional Responsibility DR 7-107 already prohibits a lawyer from making extrajudicial statements which would have a substantial likelihood of prejudicing the proceeding and that nothing in the record indicates these provisions have been implemented. It is suggested that perhaps a strong admonition to the attorneys to obey DR 7-107 may be effective.
Newsday also asserts that the need for a restraining order several months before the trial is at its lowest as opposed to during, or immediately before, trial when the potential for prejudice is greater.
It also questions whether any of the attorneys, other than defense counsel, are attorneys who fall within the purview of DR 7-107 as "associated with” the criminal proceeding.
Finally, Newsday requests that should the order be granted, the court first make findings of fact to establish the necessity therefor and that less restrictive alternatives would not be just as effective.
*178 FINDINGS OF FACT
The opposing papers do not dispute the allegations of fact contained in the moving papers. No factual issue exists as to the extrajudicial utterances and conduct attributed to the respective attorneys. Therefore, the court shall not conduct a hearing and will base its findings of fact upon the papers submitted:
Counsel for Mary Jo Buttafuoco is an attorney "associated” with a criminal action within the meaning of Code of Professional Responsibility DR 7-107.
His client, Mary Jo Buttafuoco, is married to the defendant. The very nature of the relationship between his client and the defendant provides a sufficient nexus to associate him with this criminal case.
DR 7-107 proscribes the conduct of a lawyer "participating in or associated with a criminal or civil matter”.
The rule does not limit its proscriptions to attorneys who represent parties to the action. Had the drafters intended to limit its provisions solely to attorneys prosecuting and defending actions, the rule would so provide. Therefore, the court deems attorneys "associated with” to include, in this case, the attorney for Mrs. Buttafuoco, the wife of the defendant who is also a possible witness in this criminal action.
The court also finds that counsel for Mrs. Buttafuoco has admitted using the media in the past as a forum for public influence in a pending criminal action while representing Mrs. Buttafuoco.
Counsel does not deny the allegations of the District Attorney in the supporting papers which refer to an article published in the New York Times on September 25, 1992, in which counsel for Mrs. Buttafuoco is quoted as saying in connection with the earlier publicized case: "When we stole the headlines that was quite intentional * * * It became like a game of chess. Our goal was to influence everyone as well as protect our client.”
Based upon counsel’s statement to the media in which he candidly admitted using the press to influence public opinion, the court can only conclude that such conduct will continue in contravention of DR 7-107, unless prohibited by court order.
Counsel for the defendant, though obviously associated with this case, nevertheless asserts that any comments he may have made in the past were made prior to the present case at *179 a time when he had a First Amendment right to express his opinion.
The court cannot agree and finds that the undisputed extrajudicial comments attributed to defense counsel in connection with the earlier case were made at a time when he too was bound by the Code of Professional Responsibility.
It would defy logic and reason to find that counsel for Joseph Buttafuoco was not "associated with” the criminal prosecution for the attempted murder of his client’s wife. His comments and opinions regarding the credibility, reputation and character of his client and that of the defendant in the earlier criminal case, which were given considerable coverage, were reasonably likely to pose a threat to that defendant’s right to a fair trial. Moreover, as Mr. Buttafuoco’s attorney recognizes in his opposing papers, the extrajudicial statements made in connection with the earlier case may have a "spillover effect” in the present case.
Based upon the abundant evidence submitted in support of this motion, that attorneys now associated with this case have, in the recent past, ignored the restraints of DR 7-107, it appears reasonably certain that unless directed to comply with those Disciplinary Rules they will continue their vituperative campaigns against each other, the defendant and the witnesses who may be called to testify in this case. Such conduct and statements present a reasonable likelihood of a serious and imminent threat to the administration of justice, thus necessitating court intervention at this time.
Furthermore, there are no effective alternatives so far in advance of trial which would preclude prejudicial utterances. Considering the nature of the case and the interest it has generated, and in order to ensure a fair trial, the restraining order must issue now.
CONCLUSIONS OF LAW
At the outset the court notes that it has not been asked to issue a "gag” order.
There is no request to place a prior restraint on the press. Nor is there a request to deny the press access to information regarding the progress of this pending case. Indeed, the defendant’s arraignment was videotaped and broadcast on television.
What the court has been asked to do is to ensure that defendant’s Sixth Amendment right to a fair trial and the *180 State’s interest in the fair administration of justice are not abridged by the dissemination of prejudicial information to the media by the attorneys associated with this case.
This court not only recognizes its authority to make such an order, but also its duty to take such precautionary safeguards. (See, Sheppard v Maxwell, 384 US 333, 361 [trial court might well have proscribed extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters (citing State v Van Duyne, 43 NJ 369, 389, 204 A2d 841, 852, in which the court interpreted Canon 20 of the American Bar Association’s Canons of Professional Ethics to prohibit such statements)].)
Under the circumstances of this case, the court must issue an order directing the attorneys to abide by Code of Professional Responsibility DR 7-107 which imposes a "substantial likelihood of material prejudice]” standard on their communications with the press.
This regulation of attorneys’ speech has been constitutionally sanctioned. The United States Supreme Court in Gentile v State Bar of Nev. (501 US —, —, 111 S Ct 2720, 2744-2745), recognizing the responsibilities of lawyers in the judicial system and their unique access to information, upheld the constitutionality of the "substantial likelihood of material prejudice” standard of the rules, stating: "We think that the quoted statements from our opinions in In re Sawyer, 360 U.S. 622 * * * and Sheppard v. Maxwell, supra, rather plainly indicate that the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press in Nebraska Press Assn. v. Stuart, 421 U.S. 539 * * * and the cases which preceded it. Lawyers representing clients in pending cases are key participants in the criminal justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct * * * '[a]s officers of the court, court personnel and attorneys have a fiduciary responsibility not to engage in public debate that will redound to the detriment of the accused or that will obstruct the fair administration of justice’ * * * Because lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers’ statements are likely to be received as especially authoritative. See, e.g., In re Hinds, 90 N.J. 604, 627 * * * (statements by attorneys of record relating to the case 'are likely to be considered knowledgeable, *181 reliable and true’ because of attorneys’ unique access to information); In re Rachmiel, 90 N.J. 646, 656 * * * (attorneys’ role as advocates gives them 'extraordinary power to undermine or destroy the efficacy of the criminal justice system’). We agree with the majority of the States that the substantial likelihood of material prejudice’ standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the state’s interest in fair trials”. (Emphasis supplied.)
Although attorneys are bound by the rules in the Code of Professional Responsibility without court order, occasionally, in cases such as this, where public interest is particularly keen and there is reason to believe the Code of Professional Responsibility’s rule regarding trial publicity will be violated or ignored, the court must fulfill its obligation to ensure a fair trial, exercise its authority over the proceedings and order the attorneys to obey the rules. (See, Sheppard v Maxwell, supra; United States v Cutler, 815 F Supp 599 [ED NY 1993].) The court has made specific findings of fact that unless the attorneys abide by the rules, their extrajudicial statements present a "reasonable likelihood” of serious and imminent threat to the administration of justice. (See, Matter of National Broadcasting Co. v Cooperman, 116 AD2d 287, 292-293.)
Accordingly, all attorneys associated with this case are directed to assiduously comply with DR 7-107 under penalty of contempt.
The attorneys are to be guided by the rule expressed by Mr. Justice Holmes in 1907: " 'The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether private talk or public print.’ ” (Sheppard v Maxwell, supra, at 351, quoting Patterson v Colorado, 205 US 454, 462.)
Contrary to Newsday’s contentions, the regulation of prejudicial publicity should not wait until the eve of trial.
The court is duty bound to protect the prospective pool of jurors from prejudicial pretrial publicity. This can only be accomplished if the sources of contamination are contained at the inception of the proceeding.
Therefore, the following attorneys: Nassau County District Attorney Denis Dillon and all Assistant District Attorneys in his employ; Marvyn Kornberg; Michael Rindenow; Eric W. *182 Naiburg; Philip Catapano and Christine Y. Edwards-Neumann, are hereby directed to comply with Code of Professional Responsibility DR 7-107 (22 NYCRR 1200.38), promulgated as a joint rule of the Appellate Divisions of the Supreme Court.
Accordingly, these attorneys and the Nassau County Police Department, based upon its consent, are hereby ordered:
1. To refrain from making any extrajudicial statements that a reasonable person would expect to be disseminated by means of public communication and that the lawyer or police officer knows or reasonably should know will have a substantial likelihood of materially prejudicing the proceedings in this case, including statements relating to:
A. The character, credibility, reputation or criminal record of a party, suspect or witness; the identity of a witness, or the expected testimony of a party or witness.
B. The possibility of a guilty plea, the existence or contents of any confession, admission or statement given by the defendant or his refusal or failure to make a statement.
C. The performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented.
D. Any opinion as to the guilt or innocence of the defendant.
E. Information that the attorney or Nassau County police officer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial.
F. The fact that the defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.
2. Provided that the statement complies with the above provisions, the aforementioned attorneys and Nassau County police officers shall not be prohibited from stating without elaboration:
A. The general nature of the charges or defense.
B. The information contained in a public record.
C. That an investigation of the matter is in progress.
D. The scheduling or result of any step in litigation.
E. A request for assistance in obtaining evidence and information.
*183 F. The identity, age, residence, occupation and family status of the defendant.
G. The fact, time and place of arrest, resistance, pursuit, use of weapons, and a description of physical evidence seized, other than as contained only in a confession, admission, or statement.
H. The identity of investigating and arresting officers or agencies and length of the investigation.